**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eileen Kelly, as the Surviving Parent of Sean Desmond Kelly; Donna Ashcraft as Conservator of Athena Ashcraft, natural daughter of Sean Desmond Kelly; and Lynn Butcher as the Representative of the Estate of Sean Desmond Kelly,<br><br>Plaintiffs,<br><br>vs.<br><br>State of Arizona, acting by and through the Arizona Department of Corrections; Dora B. Schriro, Director of Prisons for the State of Arizona and John Doe Schriro, husband and wife; Berry Larson, Warden of Arizona State Prison Complex - Lewis and John Doe Larson, husband and wife; and John and Jane Does I-X,<br><br>Defendants. | No. CV-09-824-PHX-DGC<br><br>**ORDER** |

Defendants have filed a motion to dismiss Plaintiffs' first amended complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Dkt. #22. The motion has been fully briefed. Dkt. ##23, 26. No party has requested oral argument. For the following reasons, the motion will be granted.

**I.     Background.**

In November of 2001, decedent Sean Kelly began serving a nine-year prison sentence at the Arizona State Prison Complex in Douglas, Arizona. Dkt. #21 ¶ 14. From May, 2002 until his death in June, 2008, Sean was transferred to five different prisons on six occasions.

1  *Id.* ¶¶ 19-25. Plaintiffs allege that the transfers were made in response to persistent threats
2  on Sean's life by members of the Aryan Brotherhood, a white-supremacist gang. *Id.*
3  ¶¶ 15-24. Plaintiffs further allege that the gang wanted to harm Sean because he refused their
4  demand that he assault a fellow inmate in March, 2002. *Id.* ¶¶ 15-16.

5  Despite being moved to different prisons, Plaintiffs allege, Sean was continually
6  threatened, and on one occasion assaulted, by members of the Aryan Brotherhood. *Id.* ¶¶
7  22-23. Several Brotherhood members were placed on Sean's Do-Not-House-With list as a
8  result of these incidents. *Id.* ¶¶ 1-21. On April 7, 2008, Sean made his final transfer to the
9  Arizona State Prison Complex, Lewis/Morey Unit. *Id.* ¶ 25. Plaintiffs allege that some of
10 the inmates on Sean's Do-Not-House-With list were also housed there. *Id.* ¶ 25.

11 On June 29, 2008, a multi-faith religious service was held on the Red Yard at the
12 Morey Unit. *Id.* ¶ 26. Plaintiffs allege that while inmates were returning to their cells after
13 the service, two white-supremacist gang members (one of whom Plaintiffs contend was on
14 Sean's Do-Not-House-With list) snuck into Sean's housing unit, entered his cell, and
15 murdered him. *Id.* ¶¶ 28-30. Plaintiffs allege that these inmates were able to murder Sean
16 because the prison was understaffed in violation of (or, in the alternative, in compliance with)
17 established Department of Corrections policies, and that Defendants Dora Schriro and Berry
18 Larson made the decision to understaff the prison. *Id.* ¶¶ 27-28. Plaintiffs contend that
19 Schriro and Larson made their decision with gross negligence and deliberate indifference to
20 Sean's Eighth and Fourteenth Amendment rights. *Id.* ¶¶ 43-44.

21 Eileen Kelly (mother of Sean Kelly), Donna Ashcraft in her capacity as conservator
22 for Athena Ashcraft (daughter of Sean Kelly), and Lynn Butcher (representative of the estate
23 of Sean Kelly) filed this suit against the State of Arizona, Dora Schriro (Director of Prisons)
24 and Berry Larson (Warden of the Arizona State Prison Complex - Lewis) in their individual
25 capacities, and ten Doe defendants. *Id.* The complaint asserts three claims for relief: that
26 Defendants deprived Sean of his civil rights in violation of 42 U.S.C. § 1983, that Defendants
27 are liable for the wrongful death of Sean Kelly in violation of A.R.S. § 12-611, and that
28 Defendants were grossly negligent in violation of Arizona common law. *Id.* ¶¶ 32-55.

**II. Analysis.**

**A. Count One - § 1983 Claim.**

**1. Standing.**

The general rule is that constitutional rights may not be asserted vicariously. *See Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987); *Alderman v. United States*, 394 U.S. 165, 174 (1969). Defendants argue, correctly, that Sean Kelly's mother and daughter lack standing to pursue a § 1983 claim for the violation of his Eighth and Fourteenth Amendment rights. Dkt. #22 at 3. Plaintiffs agree. Dkt. #23 at 10. Lynn Butcher, as representative of the estate of Sean Kelly, is the only proper plaintiff with regard to the § 1983 claim. Therefore, Defendants' motion to dismiss Plaintiffs Eileen Kelly and Donna Ashcraft, as conservator for Athena Ashcraft, from count one, will be granted.

**2. Immunity.**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has long been held that the Eleventh Amendment bars suits against States by their own citizens. *See Edelman v. Jordan*, 415 U.S. 651 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890). The two exceptions to a State's immunity from suit are when Congress has unequivocally expressed its intent to abrogate States' immunity pursuant to § 5 of the Fourteenth Amendment, and when a State has unequivocally consented to be sued. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996); *Edelman*, 415 U.S. at 673.

Defendants argue, and Plaintiffs concede, that neither exception applies here. Dkt. ##22 at 3-4, 23 at 10. Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). The State of Arizona has waived its immunity from suit with respect to *tort* claims involving serious physical injuries the likes of which Sean Kelly unquestionably suffered, but "section 1983 actions are not tort actions." *Carillo v. State*, 817 P.2d 493, 498 (Ariz. Ct. App. 1991); *see*

1 A.R.S. § 31-201.01(F), (L). Furthermore, even if the State had waived its immunity with
2 respect to § 1983 claims, it is not a "person" within the meaning of § 1983 and "even its
3 consent to be sued does not make it amenable to suit." *Id.* (citing *Will v. Mich. Dep't of State
4 Police*, 491 U.S. 58, 85 (1989)). Defendants' motion to dismiss the State of Arizona as a
5 defendant from count one will therefore be granted.

### 3. Rule 12(b)(6).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *See Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Id.* (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference occurs when an official deliberately disregards "a risk of harm of which he is aware." *Id.* at 837. The requirement is one of

actual, subjective intent – "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Clearly, the constitutional deprivation Sean Kelly suffered was sufficiently serious. The Court concludes, however, that Plaintiffs have not alleged facts sufficient to show deliberate indifference on the part of Defendants Schriro and Larson.[1]

Count one includes five paragraphs that mention Defendants Schriro and Larson. These paragraphs are entirely conclusory, alleging that Defendants Schriro and Larson "violated Sean Kelly's Eighth Amendment and Fourteenth Amendment rights by demonstrating a deliberate indifference to a known, substantial risk of serious harm"; "intentionally and wilfully understaffed the prison with a reckless disregard for the safety of Mr. Kelly and other inmates"; "violated Sean Kelly's Eighth Amendment right to protection from the violence of other prisoners"; "were deliberately indifferent and grossly negligent in their responsibility to Sean Kelly, while he remained in the care, custody and control of the Arizona Department of Corrections, including failure to train and failure to supervise ADOC employees to adhere to and follow department policies and procedures regarding inmate safety"; and are therefore "liable to Plaintiffs under 42 U.S.C. § 1983." Dkt. #21 ¶¶ 35, 40, 41, 42, 44.

The Supreme Court encountered similar allegations in *Iqbal*. The plaintiff in *Iqbal* alleged that defendants "knew of, condoned, and wilfully and maliciously agreed to subject [him] to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" 129 S. Ct.

---

[1] Plaintiffs complain that Defendants delayed in producing the investigative report of Sean Kelly's death and thereby impaired their ability to plead facts. Dkt. #23 at 3-5. Plaintiffs then note, however, that the report was produced to them and used in drafting the first amended complaint at issue in this order. *Id.* at 6-9. Plaintiffs complain that portions of the report were redacted. The Court has reviewed the redacted report attached to Plaintiffs' response. The redactions appear to encompass no more than 5% of the report, and the sections redacted do not appear to address the knowledge of Defendants Schriro and Larson. *See id.* at Ex. A.

at 1951. Adding more detail than Plaintiffs in this case, the plaintiff in *Iqbal* further alleged that one of the defendants was the "principal architect" of the discriminatory policy and that the other was "instrumental" in adopting and executing the policy. *Id.* The Supreme Court held that "[t]hese bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim[.]" *Id.* "As such," the Supreme Court explained, "the allegations are conclusory and not entitled to be assumed true." *Id.* "To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.*

The five paragraphs in count one that specifically name Defendants Schriro and Larson are at least as conclusory as the allegations found insufficient in *Iqbal*. They allege nothing more than conclusions about the extent of Defendants Schriro and Larson's knowledge, intent, and liability. They are not sufficient to state a claim.

Count one contains five other paragraphs that introduce some additional detail, but none of them mentions Defendants Schriro or Larson. Instead, Plaintiffs allege that "Defendants" – without specifying which Defendants – took the actions alleged in the paragraphs. Because the complaint names ten "John Doe" defendants, it is impossible to determine with certainty whether this additional factual detail is asserted with respect to Defendants Schriro and Larson. The nature of these additional paragraphs suggests that they are directed at the Doe defendants. The paragraphs allege the "Defendants" knew "that Sean Kelly had been threatened and targeted by other inmates"; "knew that Sean's life had been threatened previously by one of the inmates who murdered Sean"; "allowed this inmate to access a yard that lead directly to Sean's Housing Unit and failed to control and supervise his movement on the yard"; "failed to monitor the activities of the murderous inmates on the yard"; "failed to escort these inmates to their appropriate Housing Units thus allowing the murderous inmates to enter Sean Kelly's Housing Unit"; and "allowed inmates to pass through metal detectors without security staff present." Dkt. #21 ¶¶ 36-38.

Plaintiffs do not allege that Defendants Schriro or Larson were present on the yard when Sean Kelly was murdered. They do not allege that Defendants Schriro and Larson had any direct involvement in the unfortunate events of that day. Given Defendant Schriro's role as director of the Arizona Department of Corrections and Defendant Larson's role as warden of the entire Arizona State Prison Complex – Lewis, it is not plausible to believe that either of them knew specifically what was occurring on the yard on the day Sean Kelly was murdered, knew the location or movements of specific inmates that day, knew that the inmates were somehow gaining access to the housing unit in which Sean Kelly was located, or knew that prisoners were allowed to pass through a metal detector without monitoring. The greater factual detail contained in these paragraphs almost certainly applies to the guards who were on the ground – the John Doe defendants named in the case. The paragraphs cannot reasonably be read as applying to Defendants Schriro and Larson. The Court presumes that this is why Plaintiffs assert the allegations only against "Defendants" generically.[2]

Because the more factually specific paragraphs cannot be read as applying to Defendants Schriro and Larson, and the paragraphs that do name Defendants Schriro and Larson are entirely conclusory, the count one claims against Schriro and Larson must be dismissed. "To survive a motion to dismiss, a complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs have pleaded no factual material which plausibly suggests that Defendants

---

[2] In their response to the motion to dismiss, Plaintiffs adopt the same tactic. When it comes to these critical factual allegations, Plaintiffs do not allege them against Defendants Schriro and Larson. Instead, Plaintiffs again merely allege that "Defendants" had this knowledge. Dkt. #23 at 13-14.

Schriro and Larson acted with deliberate indifference toward Sean Kelly – that they were aware of the risk of harm to Sean Kelly and deliberately chose to disregard that risk. As noted above, the requirement is one of actual, subjective intent – "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Because Plaintiffs have failed to plead facts that satisfy this standard, count one will be dismissed as to Defendants Schriro and Larson.[3]

### 4. Qualified Immunity.

In determining whether a state actor is entitled to qualified immunity, the Court first asks whether the plaintiff has made a *prima facie* showing that the state actor violated plaintiff's constitutional rights. *See Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the facts alleged show a constitutional violation, the Court next determines whether the law was clearly established. *See Saucier*, 533 U.S. at 201. Finally, if the law was clearly established, yet based on the circumstances, the state actor made a mistake regarding what the law required, the officer will be entitled to immunity if the mistake was reasonable. *Id.* at 205.

As shown above, Plaintiffs have failed to plead facts sufficient to show that Defendants Schriro and Larson violated Sean Kelly's constitutional rights. Thus, in addition the failure of the claim itself, the defendants would be entitled to dismissal on the basis of qualified immunity.

---

[3] *Iqbal* also appears to have scaled back supervisory liability under § 1983 and *Bivens* claims. *Iqbal* rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." 129 S. Ct. at 1949. The Supreme Court explained: "In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* The Supreme Court concluded that "purpose rather than knowledge is required." *Id.* The Court need not decide whether this language would eliminate the liability of Defendants Schriro and Larson based solely on their knowledge that others within the Department of Corrections were violating Sean Kelly's constitutional rights. Even if such knowledge remains sufficient for a § 1983 claim, Plaintiffs have not alleged facts sufficient to show such knowledge.

### B. Counts Two and Three - Wrongful Death and Gross Negligence.

Counts two and three are state law tort claims. Dkt. #21 ¶¶ 45-55. The laws of Arizona govern these claims. A.R.S. § 31-201.01(F) provides that "any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." While the statute does not apply to count one (*see Carillo*, 817 P.2d at 498), it does apply to counts two and three. *Id.* Accordingly, the State of Arizona is the only proper defendant to these claims. Counts two and three are therefore dismissed against Defendants Schriro and Larson in their individual capacities.

The Court must also dismiss counts two and three against the State of Arizona because the Court lacks jurisdiction over the State with regard to these claims. As discussed above, the only two exceptions to a State's immunity from suit are when Congress has unequivocally expressed its intent to abrogate a States' immunity pursuant to § 5 of the Fourteenth Amendment and when a State has unequivocally consented to be sued. *See Seminole Tribe of Fla.*, 517 U.S. at 59; *Edelman*, 415 U.S. at 673. Congress has not acted here. Although A.R.S. § 31-201.01(F) amounts to a waiver of the State's immunity from suit in its own courts, "when a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the Federal courts to be astute to read the consent to embrace Federal as well as state courts." *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis in original). For this reason, the Supreme Court "consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in federal courts." *Id.* at 99-100 n.9 (citing *Great N. Life Ins. Co.*, 322 U.S. at 54; *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981)); *see Edelman*, 415 U.S. at 662-63 (citing cases). Courts should find waiver of a State's Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the

text as (will) leave no room for any other reasonable construction.'" *Edelman*, 415 U.S. at 673 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909) (parentheses in *Edelman*)). Because A.R.S. § 31-201.01(F) contains no such language regarding the State's consent to be sued in Federal courts, this Court finds that it lacks jurisdiction over the State of Arizona on these claims. *See Hale v. Arizona*, 967 F.2d 1356, 1369 (9th Cir. 1992) (plaintiffs' wage claim brought in federal court under Arizona statute barred by the Eleventh Amendment); *Coeur d'Alene Tribe of Idaho v. Idaho*, 42 F.3d 1244, 1249 (9th Cir. 1994) ("We will not infer a waiver of Eleventh Amendment immunity based on a state court holding that no sovereign immunity bars its own jurisdiction."), *rev'd in part on other grounds* 521 U.S. 261 (1997).

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Dkt. #22) is **granted**.
2. The Clerk shall terminate this action.

DATED this 5th day of November, 2009.

_____
David G. Campbell
United States District Judge